(96 App. Div. 188.)

## ANZOLONE v. PASKUSZ.

(Supreme Court, Appellate Division, First Department. July 13, 1904.)

1. LEASES—CONSTRUCTION—RULES.

Where, from a survey of the entire lease, it appears that the parties intended that a strict rule for the construction of particular words and covenants in the lease should not apply, force will not be given to such rule.

2. SAME—"RE-ENTRY."

A lease requiring a deposit to secure the performance of the covenants declared in the first clause that if any rent should be due or unpaid, or any default should be suffered, the landlord or her representative might lawfully "re-enter * * * by force or otherwise"; and a subsequent clause declared that, on any default made by the lessee, the lessor might, at her option, either dispossess the lessee, or resort to the deposit for reimbursement, etc. Held, that the word "re-enter," as used in the lease, was not restricted to a re-entry by a common-law action of ejectment, and hence the recovery of possession by the landlord by summary proceedings for nonpayment of rent before the term had expired did not terminate the relation of landlord and tenant, so as to entitle the tenant to recover the deposit.

Appeal from Trial Term, New York County.

Action by Pietro Anzolone against Jacob Paskusz. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH. McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

Benjamin N. Cardozo, for appellant.
William P. Maloney, for respondent.

PATTERSON, J. There is no dispute as to the facts of this case, and a single question of interpretation of the covenants and conditions of a written instrument is presented. At the trial the learned judge presiding submitted the interpretation of those covenants to the jury, which was an erroneous course to pursue, for there was no

ambiguity in the instruments, nor was there conflicting evidence concerning the circumstances under which they were executed, and upon which a jury might be required to pass, to enable the court to construe the instruments; but that consideration is not now material to the consideration of this appeal.

In May, 1899, certain premises, consisting of four houses in First avenue, in the borough of Manhattan, belonged to one Liebeskind, who executed and delivered leases thereof to the plaintiff, Anzolone, who entered into possession. There were four leases; that is, one for each house. Each of the leases required a deposit of money as security for the performance of covenants contained therein. In November, 1899, the then owner and lessor conveyed the premises to this defendant, and turned over to him the money deposited by the lessee. The defendant receipted for the same, and assumed repayment of the money deposited, and the fulfillment of the conditions and covenants of the leases binding upon the lessor. So far as the covenants of the leases relating to the deposit of the moneys mentioned as security are concerned, they may be stated in the words of one of those instruments:

"First. That if any rent shall be due or unpaid, or if any default shall be made in any of the covenants herein contained, or if the said premises or any part thereof shall be vacated by the said party of the second part during the said term, the party of the first part or her representative may lawfully re-enter the same either by force or otherwise without being liable to prosecution therefor, and to remove all persons or property therefrom and to relet the said premises as the agent of the said party of the second part and receive the rents thereof, applying the same, firstly, to the payment of such expenses as she or they may be put to in re-entering, reletting, etc.; secondly, to the payment of any cost or expense that the said party of the first part may be put to either for repairs or by reason of any condition or covenant being fulfilled on the part of the said party of the second part; and then to the payment of the rent due by these presents with interest, and the balance, if any there be, to pay over the same to the said party of the second part; and any deficiency which may arise, the said party of the second part shall remain liable in full therefor."

"Thirteenth. That the said party of the second part shall upon the signing, execution and delivery of this indenture of lease deposit with the said landlord, the said party of the first part, the sum of two thousand dollars, and the same when so deposited shall be held and retained by the said party of the first part as security and as and for a guarantee to her for the true, just and faithful performance and observance by the said party of the second part of each and every the terms, conditions, covenants, promises and agreements contained in this indenture of lease to be kept and performed by the said party of the second part until the full expiration of the term and period of five years as specified in this indenture. Upon any default made by the said party of the second part in the true observance of the terms of the said lease, she, the said party of the first part, may, at her option, either dispossess as hereinbefore or hereinafter set forth, the said party of the second part, and any and all parties claiming under him; or resort to the said deposit of two thousand dollars for reimbursement to herself for any and all damages which she may have sustained by reason of the said breach or breaches on the part of the said party of the second part, or she may pursue concurrently both of the aforesaid remedies; and the party of the first part may at her option, irrespective of anything hereinbefore or hereinafter contained to the contrary, apply the said sum of money so deposited in liquidated damages for any such default or breach on the part of the said party of the second part; the said party so exercising her option the said sum of money so deposited shall at once become forfeited. The said party of the second part justly and truly keeping, performing and

observing each and every the terms, conditions, covenants and promises herein contained to be kept and performed on his part, the said party of the first part shall at and after the complete expiration of the term and period of the said lease and the surrender to her in good condition as aforesaid on the said premises, repay to the said party of the second part the said sum of two thousand dollars, and during the term of said lease, the party of the first part shall pay to the said party of the second part interest on said sum at and after the rate of five (5) per cent. annually."

In July, 1900, this defendant, as landlord, dispossessed the plaintiff for nonpayment of rent, by summary proceedings. Thereafter the plaintiff, claiming that the lease was terminated by his expulsion from the premises under the summary proceedings, instituted this action to recover the amount of the deposits, less the rent due and certain other charges; his action being based upon the theory that, by the terms and provisions of the lease, the defendant was not entitled to retain any portion of the money deposited as security, for the reason that the covenants with respect to such retention gave no such right unless there were a re-entry by the landlord upon the premises under a judgment in the common-law action of ejectment; and the whole of the plaintiff's case is predicated upon a claimed presumption that the word "re-enter," as used in the first clause of the lease above quoted, is used in its strict common-law meaning. In support of that view, it is insisted that this case is controlled by what was held in Michaels v. Fishel, 169 N. Y. 381, 62 N. E. 425, and that the issuance of a warrant in summary proceedings for the removal of the plaintiff operated to cancel the whole agreement for the use of the premises, as well as to annul the relation of landlord and tenant. It should be further stated that, after the warrant was issued in the summary proceedings, the defendant relet the premises under the permission of the lease; that the lease was for five years from the 1st of May, 1899; and that this action was begun on February 1, 1901. It is also in evidence that the reletting of the premises by the defendant was at a much reduced rent.

The precise question involved here is properly formulated by the learned counsel for the appellant, and it is whether the provisions of the lease with respect to the deposit were intended to survive the issuance of a warrant in summary proceedings. If the word "re-enter," as used in the first clause of the lease above quoted, is to have nothing more than its ordinary common-law signification, then it is apparent that the covenants as to the deposit did not survive the issuance of the warrant. In Michaels v. Fishel, supra, it was held, with a very strong dissent, that the use of a purely technical term, when found in the midst of quaint words of ancient leases, gives rise to the presumption that the parties used it with its strict common-law meaning. There the word "re-enter" was used in a lease reserving to the lessors the right upon default "into and upon said premises to re-enter and * * * the same to have again * * * as in their first and former estate," and upon which re-entry depended a covenant by the lessee to pay any deficiency arising upon the reletting of the premises by the lessors; and it was held that the word meant a re-entry in its technical sense, as known to the common law. We must accept that as a binding adjudication, but as was pointed out

by Hatch, J., in Baylies v. Ingram, 84 App. Div. 360, 82 N. Y. Supp. 891, the rule stated there merely relates to a presumption in a particular case and under special circumstances.

Although there may be a strict rule of law applicable generally to the construction of covenants in leases, yet where, from a survey of the whole instrument, it appears that the parties intended that the strict rule should not apply, force will not be given to it. "Modus et conventio vincunt legem." In this case the parties to the original leases plainly indicated what they meant by the word "re-enter," and, with that expression of their intention, the technical common-law meaning of the word as used in ancient instruments is displaced. Here the word "re-enter," in the first clause, is associated with other words which indicate that the re-entry contemplated means repossession. The words are "re-enter the same either by force or otherwise." The association of the word "otherwise" with the word "re-enter" sufficiently indicates that it does not mean a re-entry under one single method, as in an action of ejectment. The word "otherwise" necessarily broadens the signification of the word "re-enter," and prevents its limitation to the technical definition of that word.

So, in the thirteenth clause, reference is made to a default of the lessee, upon which the lessor may "either dispossess as hereinbefore or hereinafter set forth," or resort to the deposit, or pursue concurrently both of the aforesaid remedies; and in the same clause it is provided that, at the complete expiration of the term and period of the lease, the lessor, under conditions, shall surrender the deposit. The construction we give to the word "re-enter," as contained in the first clause of the lease, disposes of the argument of the learned counsel for the respondent that the word "dispossess," as used in the thirteenth clause, relates only to an action of ejectment. Our view is that the word "dispossess," as used in the thirteenth clause, construed in connection with the scope and meaning we give to the word "re-enter" in the first clause, indicates that the parties intended that it should have the signification which is now attached in law to that word, which includes removal from premises by the remedies now afforded to a landlord to regain or reacquire possession for the nonpayment of rent by his tenant. Therefore we think the plaintiff was not entitled to maintain this action when it was instituted, and that the defendant may retain these deposits as security.

The judgment and order should therefore be reversed, and a new trial ordered, with costs to appellant to abide event. All concur.